Stanard, J.
This suit was commenced in the court below twenty years ago, to recover a widow’s share of the distributable surplus of her husband’s estate, who died eight years before the suit was brought. The decree that has been rendered, and which is now in question, is for a sum that is incontestably due, and is against parties incontestably responsible. Notwithstanding this, it is exposed to objections which have been urged with unusual earnestness and ability by the counsel of the appellants, and which claim the gravest consideration.
The first is, that proper parties w'ere not made—that the other distributee or distributees of the intestate were proper parties, and no sufficient excuse is assigned for failing to make him or them parties, by name or description.
The bill treats the brother of the intestate as the only kindred of the intestate entitled to distribution; and in respect to him it suggests that he has been paid his full moiety of the estate, has left the United States, and his residence is unknown. This suggestion is not controverted by the answer.
By the well established practice of courts of equity, all known párties interested in a common unliquidated *239 fund must be made parties in a suit demanding an ac-1 ° count and share of that fund. The object of this rule is to prevent multiplicity of suits, and save the parties accountable for the fund from the harassments of repeated settlements and litigation respecting it. This rule of practice is intended for the protection of the accounting party, and is enforced at his instance only. Hence, according to the course of the court of equity in England, the objection must be made by demurrer, either ore temes or in writing, or by plea or answer. When the objection has not been made and brought under notice of the court before decree, it cannot be effectually urged as cause of reversing the decree in an appellate tribunal. To allow it to be so urged by a party who has failed to urge it in the preliminary stages of the litigation, after all the expense and trouble of that litigation shall have been incurred, would frustrate the very object sought by the rule. That object cannot be attained, unless the party for whose protection the rule was established were required to ask its application to prevent future, rather than frustrate passed litigation, and by its frustration render future necessary. But this court has in several cases departed from the english practice, and treated the objection for want of parties as available to warrant the reversal of the decree, though not made in the preliminary stages of the litigation. To the authority of these cases I am bound to yield; and if the case in judgment be not distinguishable from them, it must add one more to the numerous and regretted examples of protracted and expensive litigation for an undoubted right, rendered fruitless by unskilfulness or mistake in the mode of asserting it.
In the cases referred to, it has been decided that all residuary legatees should be parties in a suit by one or more to recover their shares of the residuum; and though the objection that all are not made parties be *240 not taken in the court below, it may be taken, and will justify the reversal of the decree, in the appellate court. The effect of these decisions is to save the defendant the benefit of the objection for the want of parties by reason 0f the omission of one or more residuary legatees, after decree, though not made by demurrer, plea or answer. In each of these cases, had there been a demurrer for that cause, it would have been sustained. It so appeared to the appellate court; and submission to the authority of the decisions made in them does not necessarily result in reversal for such an objection, unless it appears that had the defendant taken it in the preliminary stages of the -litigation, it must have been sustained. Does it so appear in the case in judgment ? The bill substantially alleges, that the brother of the intestate was his next of kin, and entitled as such to a moiety of the distributable surplus, which had been paid to him, and that he had departed from the state, and his residence 'was unknown. Would a demurrer to the bill for failing to make this absent brother a party have been sustained ? It would not, unless it be necessary to make parties those who were claimants on a common fund, but whose shares have been paid by the accountable defendant. Such necessity does not, in my opinion, exist. Such necessity does not result from the spirit and object of the rule of practice. I cannot doubt that the admitted allegation that one of the residuary legatees has been satisfied, obviates the necessity of making him a party, in a litigation to recover the shares of the others. If this be so, then had the defendant in this case demurred, he would have admitted the fact that justified the omission to make the distributee a party ; and failing to demur, had he objected by plea or answer the failure to make the brother a party, the plea or answer must have denied the fact on which the plaintiff had justified the failure: and no such denial has been made.
*241 Furthermore, the casés before mentioned, in which, in effect, the benefit of the demurrer has been allowed in the appellate court though not taken in the inferior court, were suits by residuary legatees; and in each case the bills or wills under which the claim was made, shewed that there were other legatees, and who they were, and no excuse was offered for failing to make them parties. This case is that of a distributee entitled to a fixed portion of the estate without regard to the number of the other distributees, and those other distributees not known, or at least not ascertained by the court to be known, to the plaintiff. While the rule of practice invariably charges on the plaintiff claiming as residuary legatee, the duty of making all residuary legatees parties, if the objection for the omission be taken in due time, that is not the case with respect to a distributee plaintiff, unless it affirmatively appear that next of kin, other than the plaintiff, is known to the plaintiff; and unless it so appear, the suit proceeds, and (if asked for in its progress) an enquiry will be directed to be made by the master.
It is objected further, that there may be distributees other than the brother; and though not known, distributees, by the general description of distributees, ought to have been made parties by the bill. This objection is not well founded. 1st, Because the bill has treated the brother as the only distributee ; and that not being controverted, there was no occasion for the plaintiff to seek out or make other parties. 2ndly, If it had been admissible to act on the supposition that there were other but unknown distributees, the proper course would have been, not that suggested by the objection, but by a direction to the master to enquire and state to the court who were the next of kin; and this enquiry the defendants might have had, if the case had left room for it, and they had thought proper to ask it. Cooper’s Eq. PI. 39-40. Mitf. PI. by Jeremy, 167. et seq. My *242 conclusion is, that the decree was not premature in favour of the plaintiff, by reason of want of proper parties.
The more serious question is, was it premature as to the appellants, because rendered before due pursuit of the effects of the principal, the absent defendant ? The appellants, being sureties, have a just claim to have the demand satisfied, if it could be so, out of the effects of the principal, if they were accessible. This is an equity springing from the relations of the codefendants, and operating between them, not against the plaintiff. It is subordinate to, and should not be permitted to control or impair the rights of the plaintiff, to whom both principal and sureties are equally bound. It justly claims the fostering care of a court of equity, and should be enforced as far as it can be without materially impairing or delaying the rights to which it is subordinate. To permit it to impair or delay those rights, would be to do certain injustice to the party holding the paramount claim, in the pursuit, perhaps a vain one, of the means of doing justice to the subordinate one. If the pursuit prove abortive, then uncompensated wrong will have been done by the postponement of the just and ascertained demand of the plaintiff; and if otherwise, the injury of this delay wdll have been inflicted on the plaintiff, and all .the benefit of the pursuit enure to others; and the chance of obtaining the means of doing justice between the defendants will have been purchased at the expense of certain injustice to the plaintiff. This would not, in my estimation, be reconcile-able with the precepts of sound reason, the principles of equity, or doctrines inculcated directly or inferentially by the decisions of this court. When relief is sought against parties holding the relation of principal and surety, this court will so far defer to the equity arising from such relation, as to protect it from the caprice of the plaintiff, and give it effect if it can be done *243 without essentially derogating from the right of the plaintiff. In the case of Chamberlayne and others v. Temple, 2 Rand. 384. all the parties were, in the opinion of the court, liable to the plaintiff, but between themselves equity required a rateable contribution ; and as the materials were all in the record, to make an apportionment of the burthen according to the requirements of this equity, without materially delaying the plaintiff, the court directed such apportionment: but it is expressly adjudged that it was not justifiable to subject the plaintiff to material delay or detriment, to give effect to this equity between the defendants; and the plain inference from the case is, that the delay incident to the adjustment of the unliquidated accounts, to furnish the means of apportionment, would'not be justifiable. In the case of Dabney's adm'r et al. v. Smith's legatees, 5 Leigh 13. the personal representative of the sheriff, the administrator of his deputy who conducted the administration, and the solvent sureties of the sheriff were defendants; and a decree having been rendered against the personal representatives of the sheriff and deputy, de bonis testatoris, and the execution on that decree being returned nulla bona, a decree was, on motion, rendered against the sureties of the sheriff; the court disregarding the objection of those sureties, that in equity, for their exoneration, the demand ought to be charged on the sureties of those representatives by an account to establish a devastavit, and on the real estate of the principal and the surety of the deputy sheriff, and the plaintiffs should be put in pursuit of satisfaction from these sources, before the sureties should be subjected to the decree. The doctrine of Chamberlayne v. Temple is there recognized, and it is adjudged that in the pursuit of satisfaction from the principal or those responsible for his estate, no measure subjecting the plaintiff to material injury or delay should be required as preliminary to the decree against the sureties. In that case the decree was in the first *244 instance rendered against the representative of the principal; and that course of practice is prescribed by the consideration, that if a joint decree were rendered against principal and sureties, the plaintiff or officer might capriciously or carelessly levy the amount from the effects of the sureties, and frustrate their equity to have the satisfaction sought from the principal, if attainable without material delay; and by the further consideration, that until a return of nulla Iona on the execution up on that decree, it did not appear of record that a devastavit had been committed which rendered the sureties chargeable. In that case, when an account became necessary for the further pursuit of satisfaction from the effects of the principal, or from responsibilities for those effects, the plaintiff was liberated from that further pursuit, and the surety was told that “ he must content himself with his right of subrogation, and take upon himself that pursuit, as the consequence of his having become sponsor for the principal.”
Under the guidance of these doctrines, I proceed to the enquiry, Was the decree in the case in judgment prematurely rendered against the sureties ?
It is not questioned that the plaintiff resorted properly to a court of equity for relief, making the absent administrator and his resident sureties parties. With these, William. Bowden is also made a party, on the suggestion that effects of the absent administrator have been put in his hands to pay debts; and though the plaintiff declines to charge positively that such effects have been placed in Bowden’s hands, Bowden is called on to say whether the fact be so or not. The answer of mrs. Bowden the executrix states that her testator, so far from being indebted to Brown, or having in his hands any estate to satisfy the plaintiff’s claim, was a creditor of Brown to a considerable amount; that Brown is still considerably indebted to her as executrix, and had given her security on'a reversionary interest in certain *245 slaves which he claimed in right of his wife, and which if sold would be inadequate to pay the debt. In March 1S26, the case standing on the bill and answer in respect to this defendant, without any other evidence in regard to the effects of Brown in the hands of Bowden, and an account having been taken ascertaining the uncontested balance that was ultimately decreed to the plaintiff as her share of her husband’s estate, there was, in my opinion, no just impediment- to a decree at that time for that balance, and injustice was done the plaintiff by the failure to render the decree at that time. All the delay since has done wrong to the appellee; and I think that nothing in the record justifies a further delay, and that the decree ought to be affirmed.